## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

THOMAS DAMAN,         )
                                  )
         Plaintiff,        )
                                  )
        v.                 )     2:22cv1020
                                  )     **Electronic Filing**
FIRSTENERGY CORP.,     )
FIRSTENERGY NUCLEAR    )
OPERATING COMPANY formally a   )
Subsidiary of First Energy Corp., ENERGY )
HARBOR NUCLEAR CORP. formally   )
known as FirstEnergy Nuclear Operating   )
Company,             )
                                  )
         Defendants.    )

## OPINION

On June 13, 2022, proceeding *pro se*, Thomas Daman ("plaintiff") commenced this action in the Court of Common Pleas of Beaver County against his former employer, FirstEnergy Corp., FirstEnergy Nuclear Operating Company, and Energy Harbor Nuclear Corp. (collectively, the "defendants"). Plaintiff seeks to have his employment "reinstated" and to recover compensation for lost wages and benefits due to his "forced retirement" following a grievance procedure undertaken pursuant to a Collective Bargaining Agreement ("CBA"). Defendants removed the action to this court on July 13, 2022, based on federal question jurisdiction. Presently before the court is defendants' motion to dismiss. For the reasons set forth below, the motion will be granted.

It is well-settled that in reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "[t]he applicable standard of review requires the court to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989). Under the Supreme Court's decision in Bell Atlantic Corp. v.

Twombly, 550 U.S. 544, 561 (2007), dismissal of a complaint pursuant to Rule 12(b)(6) is proper only where the averments of the complaint plausibly fail to raise directly or inferentially the material elements necessary to obtain relief under a viable legal theory of recovery.  Id. at 544.  In other words, the allegations of the complaint must be grounded in enough of a factual basis to move the claim from the realm of mere possibility to one that shows entitlement by presenting "a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  In contrast, pleading facts that only offer "'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" nor will advancing only factual allegations that are "'merely consistent with' a defendant's liability." Id.  Similarly, tendering only "naked assertions" that are devoid of "further factual enhancement" falls short of presenting sufficient factual content to permit an inference that what has been presented is more than a mere possibility of misconduct. Id. at 1949-50; see also Twombly, 550 U.S. at 563 n. 8 (A complaint states a claim where its factual averments sufficiently raise a "'reasonably founded hope that the [discovery] process will reveal relevant evidence' to support the claim.") (quoting Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 347 (2005) & Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 741 (1975)); accord Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997) (a court need not credit "bald assertions" or "legal conclusions" in assessing a motion to dismiss) (citing with approval Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1357 (2d ed. 1997) ("courts, when examining 12(b)(6) motions, have rejected 'legal conclusions,' 'unsupported conclusions,' 'unwarranted inferences,'

2

'unwarranted deductions,' 'footless conclusions of law,' or 'sweeping legal conclusions cast in the form of factual allegations.'").

This is not to be understood as imposing a probability standard at the pleading stage. Iqbal, 556 U.S. at 678 ("'The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.'"); Phillips v. County of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008) (same). Instead, "[t]he Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest the required element ... [and provides] enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" Phillips, 515 F.3d at 235; see also Wilkerson v. New Media Technology Charter School Inc., 522 F.3d 315, 321 (3d Cir. 2008) ("'The complaint must state 'enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'") (quoting Phillips, 515 F.3d at 235) (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 550 U.S. at 563.

It also is well settled that pleadings filed by *pro se* litigants are to be construed liberally. McNeil v. United States, 508 U.S. 106, 113 (1993); Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002). And in such circumstances the court has an obligation to "apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name." Higgins, 293 F.3d at 688 (quoting Holley v. Dept. of Veterans Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)).

But the above-referenced standards are not to be read as a license to excuse or overlook procedural shortcomings in pleadings submitted by those who choose to represent themselves. McNeil, 508 U.S. at 113 ("we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel").

3

Thus, a complaint drafted without the benefit of counsel nevertheless must comply with Federal Rule of Civil Procedure 8(a).  And, while Fed. R. Civ. P. 8(a)(2) requires only a "short and plain statement of the claims showing that the pleader is entitled to relief," Rule 12(b)(6) is not without meaning.  Krantz v. Prudential Investments Fund Management, 305 F.3d 140, 142 (3d Cir. 2002).  It follows that in order to comply with the applicable pleading standards "more detail is often required than the bald statement by plaintiff that he has a valid claim of some type against defendant."  Id. at 142 - 43 (quoting Charles A. Wright and Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE, § 1357 at 318 (2d ed. 1990)).  This principle appears to be even more well-grounded after Twombly.

The record as read in the light most favorable to plaintiff is as follows.  Plaintiff was employed at FirstEnergy Nuclear Operating Company at its Beaver Valley Power Station plant in Shippingport, Pennsylvania.  On November 3, 2014, he was injured at work and started receiving disability payments.  Plaintiff continued receiving these disability payments until December 10, 2014, when defendants "separated" plaintiff from his employment due to his disability.  Thereafter, on March 3, 2016, plaintiff received a letter and several forms from a FirstEnergy retirement programs consultant instructing him to complete the forms so he could start receiving his retirement benefits.  The letter specified that if FirstEnergy did not receive a response from him, plaintiff would start receiving payments on May 1, 2016, retroactive to January 1, 2016.  Therein, the consultant acknowledged that he was aware "that [plaintiff] [did] not want to commence [his] pension benefits, as [he] expect[ed] to return to work following [his] disability."  Further, the consultant offered the option that if the plaintiff's disability improved enough to permit him to return to work, his pension benefits could be suspended upon his return and re-commenced when he formally decided to retire.

Although plaintiff notified the defendants multiple times that his physician had approved his return to work without restrictions, defendants denied his requests to return.  After plaintiff's multiple requests to return were denied, he initiated a formal grievance through his union on October 26, 2016.  However, on January 14, 2018, the union withdrew the grievance without prejudice as part of its new contract negotiations with defendants.  Plaintiff was not notified of the withdrawal until January 18, 2019.

On June 13, 2022, almost three and a half years after plaintiff was notified of the withdrawal of his union grievance, plaintiff filed his *pro se* complaint in the Court of Common Pleas of Beaver County, Pennsylvania.  The complaint alleges that defendants violated the CBA by (1) forcing plaintiff to retire early due to the injury he suffered at work; and (2) not allowing him to return to work after healing from said injury.  As a result, plaintiff is seeking to be reinstated, to be compensated for lost wages and benefits in excess of $500,000.00, and to recover damages.

On July 20, 2022, defendants filed the motion to dismiss currently before the court.  As a preliminary matter, defendants contend that plaintiff's cause of action for breach of the CBA must be considered under Section 301 of the Labor Management Relations Act.  Defendants argue that their motion should be granted for several reasons.  First, plaintiff's Section 301 claim is untimely and should be dismissed with prejudice because such claims are subject to a six-month statute of limitations.  And here, plaintiff filed his complaint three and a half years after the union's withdrawal of his grievance and almost seven years after the initial denial of his "alleged" request to return to work.  Second, plaintiff's claims should be dismissed for failure to state a claim upon which relief can be granted because he failed to name his union as a defendant or allege that the union breached its duty of fair representation.  Lastly, because defendants FirstEnergy Corp. and Energy Harbor Nuclear Corp. were not parties to the CBA at issue, the

plaintiff's Section 301 claim against them must be dismissed.  For these reasons, defendants are requesting that their motion to dismiss be granted with prejudice.

In response, plaintiff maintains that his complaint is proper and adequate.  He argues that his complaint was timely because Section 301's six-month statute of limitations is not applicable in this case.  Rather, Pennsylvania's four-year statute of limitations under general contract law applies.  Additionally, plaintiff avers that as of July 26, 2022, defendants have failed to serve him with their motion to dismiss, an error that he asserts is fatal to their motion.

Defendants counter that a copy of the motion to dismiss was indeed mailed to the plaintiff's address and posit that he must have misplaced it.   In addition, the motion was filed into the record utilizing the court's CM/ECF electronic filing system.  Moreover, defendants suggest that this is a nonissue because plaintiff filed his response twenty-eight days before the Court's deadline.  Therefore, plaintiff was not prejudiced by his allegation that he was not properly served with defendants' motion.

Defendants are correct that plaintiff is asserting a hybrid Section 301 claim.  This type of claim comprises two interdependent causes of action: it is a combination of a breach of contract claim and a Section 301 fair representation claim.  Vadino v. A. Valey Engineers, 903 F.2d 253, 255 (1990).  The first action is the allegation that an employer breached its CBA, and the second allegation is that a union breached its duty of fair representation.  Id.  And for this reason, "'[t]o prevail against either the company or the Union, ... [the employee-plaintiff] must not only show that [his or her] discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union.'"  DelCostello v. Intl. Broth. of Teamsters, 462 U.S. 151, 165 (1983).  For these reasons, an employee can sue either the union, the employer, or both; but his burden remains the same in any event: proving a breach of the CBA and a breach of the duty of fair representation.  Id.

6

Defendant's first reason in support of its motion to dismiss concerns whether the limitations period has run, thereby barring plaintiff's claim.  Under the Federal Rules of Civil Procedure, a statute of limitations defense must be raised in the answer, because Rule 12(b)(6) does not authorize the defense to be raised by the motion.  Robinson v. Johnson, 313 F.3d 128, 134–35 (3d Cir. 2002), cert. denied, 540 U.S. 826 (2003).  Nevertheless, "the law of this circuit (the so-called 'Third Circuit Rule') permits a limitations defense to be raised by a motion under Rule 12(b)(6), but only if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations."  Id. at 135.  "If the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)."  Id.; accord Large v. County of Montgomery, 307 Fed. Appx. 606, 608 (3d Cir. 2009) (A complaint may be dismissed pursuant to Fed. R. P. 12(b)(6) on statute of limitations grounds if the untimeliness is apparent on the face of the complaint and the defense clearly has been raised by the defendant).

Generally, the statute of limitations for a Section 301 claim is six months, and the accrual date is the date on which a claimant "'…*discovers*, or in the exercise of reasonable diligence should have *discovered*, the acts constituting the alleged violation.'"  Vadino, 903 F.2d at 260 (emphasis added).  In that regard, the limitation period is the same for both claims against the employer and union, regardless of whether they are both parties in the litigation.  Id.  Where a CBA establishes a grievance procedure, an employee cannot sue his employer if he or she did not at the very least first attempt to resolve the dispute through the grievance process.  Cf. Podobnik v. U.S. Postal Serv., 409 F.3d 584, 595 (3d Cir. 2005).  Therefore, the accrual date for a union's breach of fair representations starts when an employee receives notice that his or her union will no longer proceed with the grievance.  Vadino, 903 F.2d at 260.  If there is no explicit notice by the union, then the accrual date is when it becomes or should have become apparent to

7

the employee that further union appeals would be futile.  Id.  This approach requires a case-by-case analysis of the surrounding circumstances to determine when it became clear that further appeals would be futile.  Scott v. Local 863, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen, & Helpers of Am., 725 F.2d 226, 229 (3d Cir. 1984).

Here, plaintiff received notice that grievance No.25719 was withdrawn via US Mail on January 18, 2019.  Therefore, the accrual date is on January 18, 2019.  And in compliance with the six-month statute of limitations, plaintiff's time for filing the action expired on July 19, 2019.  Accordingly, plaintiff's complaint, which was filed more than three years after the accrual date, is time-barred.

Although plaintiff's action is time-barred, that temporal restriction can be modified by equitable concerns.  Podobnik, 409 F.3d at 591.  Equitable tolling stops the statute of limitations from running when an accrual date already has been triggered.  Ruehl v. Viacom, Inc., 500 F.3d 375, 384 (3d Cir. 2007).  It may be appropriate in three situations: (1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action,[1] (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights, or (3) where the plaintiff has timely asserted his or her rights in the wrong forum.  Oshiver v. Levin, Fishbein, Sedran & Berman , 38 F.3d 1380, 1387 (3d Cir. 1994).

Here, the first situation is not applicable because plaintiff has not asserted that defendants actively misled him in respect to his cause of action.  And the third situation is not applicable because plaintiff does not claim that he previously filed his claim in some forum prior to filing it in Beaver County.

---

[1] Under this approach the plaintiff is obligated to show not only that the defendant actively misled the plaintiff but also that this deception caused the plaintiff's non-compliance with the limitations provision.  Ruehl, 500 F.3d at 384.

As to the second situation, the Supreme Court has held that courts are generally "less forgiving in receiving late filings where [a] claimant failed to exercise due diligence in preserving his legal rights." Robinson v. Dalton, 107 F.3d 1018, 1023 (3d Cir. 1997). In this regard, applicability of this tolling scenario takes into account "the obligation of the plaintiff to exercise due diligence to preserve his [] claim." Podobnik, 409 F.3d at 592. And to this end, equitable tolling should be applied "sparingly," and a seemingly tardy plaintiff bears the burden of proof that the doctrine applies. Id. at 591.

In Robinson v. Dalton, the United States Court of Appeals for the Third Circuit held that one telephone conversation erroneously instructing the plaintiff to take no further action did not rise to the level of the plaintiff being prevented in some extraordinary way from asserting his rights. 107 F.3d 1018, 1023 (3d Cir. 1997). The court reasoned that applying equitable tolling where the employee "simply assert[ed] [he] was given erroneous telephone advice… [would change] equitable tolling from a remedy available only sparingly and in extraordinary situations into one that can be readily invoked by those who have missed carefully drawn deadlines." Id. at 1024. Furthermore, the court later held in Ruehl that a plaintiff must demonstrate that he could not have discovered the essential information bearing on his claim through the exercise of *reasonable* diligence. Ruehl, 500 F.3d at 384 (emphasis added). For instance, equitable tolling was not appropriate where the employee was under "a continuing duty to diligently pursue" his claim, but nothing in the record indicated that he took further action until after the statute of limitations had run. Podobnik, 409 F.3d at 593.

Here, plaintiff's only grievance was dismissed without prejudice. Thereafter, nothing in the record suggests that he took any further action toward pursuing his claim until after the limitation period expired. Therefore, based on the facts at hand, he has not shown that he diligently pursued his claims; nor has he shown that he was prevented by defendants from

asserting his rights in some extraordinary way.  Against this backdrop, equitable tolling is not appropriate and therefore plaintiff's claim is time-barred.

Although defendants' motion to dismiss appears to be well taken, leave to amend is to be freely granted where justice so requires.  Plaintiff is in the best position to know whether he can advance sufficient allegations to overcome the staleness of his claims through equitable tolling.  Accordingly, the court will permit him to file an amended complaint that presents facts that plausibly suggest equitable tolling is applicable.

In short, plaintiff's Section 301 hybrid claim is time-barred.  The statute of limits for such claims is six months, and plaintiff's complaint was filed more than three years after his claim expired.  And because a basis for equitable tolling does not appear in plaintiff's complaint, defendant's motion to dismiss will be granted.  Nevertheless, plaintiff will be given an opportunity to amend his complaint to show that equitable tolling is appropriate.  An appropriate order will follow.

<u>March 29, 2023</u>

<u>s/David Stewart Cercone</u>
David Stewart Cercone
Senior United States District Judge

cc:     Thomas Daman
        578 Jefferson Street
        Rochester, PA 15074

        (*Via First Class Mail*)

        Eric Baisden, Esquire

        (*Via CM/ECF Electronic Mail*)